KILPATRICK TOWNSEND & STOCKTON LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN T. BRICKER (State Bar No. 269100)
GIA L. CINCONE (State Bar No. 141668)
CALLA E. YEE (State Bar No. 306652)
Two Embarcadero Center, Suite 1900
San Francisco, California  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email:    ggilchrist@kilpatricktownsend.com
          rbricker@kilpatricktownsend.com
          gcincone@kilpatricktownsend.com
          cyee@kilpatricktownsend.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DORSAZ, INC.,<br><br>　　　　　Defendants. | Case No. 3:18-cv-03240-WHO<br><br>**JUDGMENT AND PERMANENT INJUNCTION**<br><br>Judge:  Honorable William H. Orrick<br>Complaint Filed:  May 31, 2019<br>Trial Date:  Not Yet Set |

Plaintiff's motion for entry of default judgment was properly noticed and served and was noticed for hearing on May 8, 2019, at 2:00pm.  The Court rules as follows:

**I.  Summary of the Complaint**

1.　　　Plaintiff Levi Strauss & Co. ("LS&Co.") has filed a Complaint alleging trademark infringement, dilution, and unfair competition under federal and California law against Dorsaz, Inc. ("Defendant" or "Dorsaz").  LS&Co. also sued a retailer of Dorsaz's XELEMENT brand products, Nanal, Inc., who was dismissed from this case earlier.  (Docket No. 22.)  LS&Co. alleges that Dorsaz has promoted, advertised, distributed, offered, and sold clothing products, including jeans and other apparel, that violate LS&Co.'s rights in a number of its federally registered trademark.  LS&Co. further alleges that many of the allegedly infringing products that Dorsaz has manufactured, sourced, marketed, offered for sale, and/or sold display designs that are confusingly similar to LS&Co.'s

Arcuate Stitching Design Trademark (the "Arcuate trademark").  Defendant has failed to respond to LS&Co.'s Complaint and default was entered on August 22, 2018.  (Docket No. 13.)

## II.     Findings of Fact and Conclusions of Law

2.     LS&Co. has federal trademark registrations for its Arcuate trademark.  LS&Co. continuously has used its trademark for well over a century to distinguish its products.  (Complaint ¶¶ 10-11.)

3.     The Arcuate trademark consists of an inherently distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use.  (Complaint ¶ 10 & Exs. A and B.)  LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on jeans and later used it on other products as well, and owns a number of federal registrations for the mark.  (Complaint ¶ 11.)

4.     The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.  (Complaint ¶ 12.)  The Arcuate trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® products.  (*Id.*)

5.     The Arcuate trademark became famous prior to Defendant's conduct that is the subject of the Complaint.  (*Id.*)

6.     Defendant, Dorsaz, with knowledge of LS&Co.'s trademarks, has manufactured, promoted, and sold garments under the brand "XELEMENT" that bear designs that are likely to cause confusion regarding the source of the products, or of an affiliation or sponsorship with LS&Co. or its products or the Arcuate trademark, as shown in Exhibit A to this Order.  (Complaint ¶¶ 14-16 & Ex. C.)  The XELEMENT brand garments bear designs that are confusingly similar to LS&Co.'s marks.  They compete with LS&Co.'s products, and are likely to erode substantial goodwill that LS&Co. has accumulated in its distinctive trademarks over many years.

## III.    Conclusions of Law

7.     Once a defendant has defaulted, the well-pleaded allegations of the complaint are accepted as true, and the defendant's liability as framed by the complaint is established.  *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991).

/ / /

8. The Lanham Act prohibits the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" where such use is likely to cause confusion, to cause mistake, or to deceive. 15 U.S.C. § 1114(1)(a). To prevail on its trademark infringement claims, LS&Co. must establish that (1) it owns valid and protectable trademarks, and (2) defendants' use of similar designs creates a likelihood of confusion as to the origin or sponsorship of defendants' goods. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

9. The Lanham Act also renders Defendant liable for diluting LS&Co.'s mark if, "at any time after the owner's mark has become famous, [it] commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c).

10. Dorsaz's challenged products, examples of which are depicted in Exhibit A, infringe and dilute LS&Co.'s Arcuate trademark.

11. Dorsaz has received a minimum $26,751.67 in revenue attributable to sales of these infringing and diluting products. No evidence of costs to produce these revenues appears in the record.

12. Dorsaz acted willfully and in disregard of LS&Co.'s rights such that there is no equitable basis for limiting LS&Co.'s recovery of Dorsaz's profits and establishing that this is an exceptional case for purposes of LS&Co.'s entitlement to attorneys' fees. *Adobe Sys. Inc. v. Brooks*, No. 5:08-CV-04044 RMW, 2009 WL 593343, at *3 (N.D. Cal. Mar. 5, 2009).

13. The Lanham Act expressly authorizes courts to grant injunctions to remedy violations of a trademark owner's rights. 15 U.S.C. § 1116(a) (vesting the district court with the "power to grant injunctions, according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of a trademark owner). "It is well established that courts can issue injunctions as part of default judgments." *China Cent. Television v. Create New Tech. (HK) Ltd.,* 2015 WL 12732432, at *19 (C.D. Cal. Dec. 7, 2015) (quoting *Sony Music Entm't, Inc. v. Elias*, No. CV 03–6387 DT (RCx), 2004 WL 141959, *3 (C. D. Cal. Jan. 20, 2004)).

14. Dorsaz's actions have caused and, unless enjoined, will cause LS&Co. irreparable harm for which money damages are inadequate. (Complaint ¶¶ 18-19.) A permanent injunction is warranted where LS&Co. demonstrates (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that it is in the public's interest to issue the injunction.

15. A permanent injunction is an appropriate remedy for the irreparable harm caused by continuous and ongoing trademark infringement. *See, e.g., Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775, at *10 (C.D. Cal. July 19, 2013); *China Cent. Television,* 2015 WL 12732432, at *19. *See Century 21 Real Estate LLC v. RealtyComp.com,* No. C-14-4774 EMC, 2015 WL 1009660, at *5 (N.D. Cal. Mar. 6, 2015), where this Court granted a permanent injunction against a defaulting defendant because the infringing activity persisted, and because defendant competed directly with the plaintiff.

**IV.    Order of Judgment**

16. Good cause appearing, it is hereby ordered and adjudged as follows:

    a. Defendant shall pay $26,751.67 in damages to LS&Co., plus $10,170.8300 in attorney's fees and $400.00 in costs, totaling $37,322.50.

    b. Commencing as of the "So Ordered" date of this Judgment and Permanent Injunction, Dorsaz, its principals, agents, affiliates, employees, officers, directors, servants, privies, successors, and assigns, and all persons acting in concert or participating with it or under its control who receive actual notice of this Order, are hereby permanently enjoined and restrained, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following until such time as this Order is dissolved or modified by further Court order:

        i. Manufacturing, selling, offering for sale, distributing, advertising, promoting, or displaying any garment that displays any of the designs and/or designations illustrated in Exhibit A to this Order or any other

designation and/or design that is as similar to the Arcuate trademark as the designs shown in Exhibit A are to the identified trademarks (hereinafter collectively the "Prohibited Designs and Designations");

  ii. Licensing or assigning the Dorsaz or XELEMENT trademarks, or the assets or beneficial ownership or control of assets associated with the production of goods under the Dorsaz or XELEMENT trademarks, without disclosing and providing actual notice to the licensee, buyer, or assignee of such trademarks or assets;

  iii. Refusing refunds to any retailer, wholesaler, jobber, distributor, or other seller located in the United States or its territories which, upon receiving notice of this Injunction, returns products to Dorsaz bearing the Prohibited Designs and Designations;

  iv. Assisting, aiding, or abetting any person or entity engaging in or performing any act prohibited by this paragraph.

c. This Injunction shall apply throughout the world to the fullest extent of this Court's jurisdiction. This is a final judgment as to all claims asserted against Defendant in this action.

d. This Court shall retain jurisdiction for the purpose of making any further orders necessary or proper for the construction or modification of this Judgment, the enforcement thereof, and/or the punishment for any violations thereof. If LS&Co. commences an action for enforcement of this Judgment, the prevailing party shall be awarded reasonable attorneys' fees and costs from the other party.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

17. For the purpose of any future proceeding to enforce the terms of this Judgment, service by certified or registered mail upon a party or their counsel of record at their last known address shall be deemed adequate notice for each party.

IT IS SO ORDERED.

Dated: May 20, 2019

William H. Orrick
United States District Judge

# Exhibit A

 

Exhibit C-1





Exhibit C-2



Exhibit C-3



Exhibit C-4





Exhibit C-5